[L.A. No. 30375. In Bank. Aug. 8, 1975.]

SAV-ON DRUGS, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS
ANGELES COUNTY, Respondent;
ALLEN E. BOTNEY, Real Party in Interest.

## COUNSEL

Lawler, Felix & Hall, Richard D. DeLuce and Bruce R. Corbett for Petitioner.

No appearance for Respondent.

Allen E. Botney, in pro. per., for Real Party in Interest.

## OPINION

**RICHARDSON, J.**—Petitioner, seeking a writ of prohibition, is one of several defendants in a class action currently pending in the Los Angeles County Superior Court. That court granted the motion of plaintiff (real party in interest) for an order compelling petitioner to answer certain interrogatories concerning petitioner's state sales tax returns. Petitioner contends that the information sought is privileged or otherwise immune from discovery. We agree, in part, and issue the writ as to one of the interrogatories.

Since the dispute arises from the interrelationship between the sales tax and trading stamps, and to give meaning to the setting from which the litigation arises, we review certain general principles affecting tax and stamp. The sales tax is imposed on the gross receipts of a retailer (Rev. & Tax. Code, § 6051), but the retailer shall collect reimbursement of the tax "from the consumer in so far as it can be done." (Rev. & Tax.

Code, § 6052.) Trading stamps given on taxable sales are considered a cash discount, and therefore are deductible from the retailer's gross receipts. (*Eisenberg's W. House* v. *St. Bd. Equal.,* 72 Cal.App.2d 8, 11 [164 P.2d 572]; Rev. & Tax. Code, § 6012, subd. (c)(1).) However, a retailer who charges customers sales tax on the basis of the full sales price, but pays tax to the state on the basis of the sales price less the deduction, obviously collects from his customers more tax than he pays the state. (Cal. Admin. Code, tit. 18, § 1700 (2)(B).) In such a situation, a statutory obligation of repayment is imposed upon the retailer in favor of, alternatively, the customer or the state. (Rev. & Tax. Code, § 6054.5.) To meet this obligation the State Board of Equalization by administrative regulation requires that retailers either (1) reduce the sales price upon which tax reimbursement is charged so it will correspond to the price upon which the retailer computes the tax he pays the state; (2) give the customers trading stamps for the total amount paid, i.e., both total retail sales price and the amount of tax charged; or (3) take no deduction from gross receipts on account of the cost of the stamps. (Cal. Admin. Code, tit. 18, § 1700 (2)(B).)

Real party in interest brought this class action on behalf of himself and all others similarly situated against six defendant retailers, including petitioner Sav-On. Originally, the third amended complaint contained three causes of action. The first cause of action alleges that petitioner did not comply with any of the above three procedures, and that as a result petitioner charged excessive sales taxes to its customers, constituting the class which real party in interest claims to represent. The second cause of action alleges that petitioner did comply with the second procedure listed above, i.e., did give trading stamps for both the total retail sales and the amount of tax reimbursement charged, but that nonetheless such a procedure fails adequately to compensate customers for the tax charged, resulting again in a charge to customers of excessive sales taxes. The third cause of action did not concern the three alternative procedures but alleged instead that petitioner took an illegal deduction in determining its gross receipts, and thus paid the state less tax than it should have. Counsel informs us that real party in interest has withdrawn this third cause of action, conceding that it fails to state a valid claim for relief.

During the course of pretrial discovery, real party in interest served upon petitioner three interrogatories which are the subject of petitioner's attack. Interrogatory 40 asks what specific deductions or adjustments petitioner made in respect to sales tax returns for the years 1967-1971, inclusive, and also what law or regulation permits them. Interrogatory 41

questions whether petitioner used a certain tax return form for the years in question. Interrogatory 42, directed at copies of the tax returns, inquires if petitioner has copies, where they are located, who the custodian is, and whether petitioner voluntarily will make them available to real party in interest. Petitioner objected to these questions on the grounds that the tax material was privileged, and that the laws upon which any deductions were based were not discoverable. The superior court granted real party in interest's motion to compel answers to the above interrogatories and the instant petition followed.

■ Preliminarily, it may be observed that the prerogative writ is not the favored method of reviewing discovery orders. Ordinarily the aggrieved party must raise the issue on direct appeal from a final judgment. (*Pacific Tel. & Tel. Co.* v. *Superior Court,* 2 Cal.3d 161, 169 [84 Cal.Rptr. 718, 465 P.2d 854]; *Oceanside Union School Dist.* v. *Superior Court,* 58 Cal.2d 180, 185-186, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439].) The premise upon which this general policy rests is that in the great majority of cases the delay due to interim review of discovery orders is likely to result in greater harm to the judicial process by reason of protracted delay than is the enforcement of a possibly improper discovery order. (2 Cal.3d at p. 170.) Nonetheless, we have concluded that the instant case comes within an exception recognized in *Pacific Tel., supra,* 2 Cal.3d at page 170, footnote 11 and more recently in *Roberts* v. *Superior Court,* 9 Cal.3d 330, 335-336 [107 Cal.Rptr. 309, 508 P.2d 309], to the effect that we may properly entertain a petition for extraordinary relief when the petitioning party asserts, as here, that to compel an answer would violate a privilege.

■ In considering the merits, we review first petitioner's claim that real party in interest cannot by discovery require disclosure of the specific statutes and administrative regulations supporting the tax deductions at issue herein. This is correct. Both the California Revenue and Taxation Code and the California Administrative Code are as readily available to real party in interest as to petitioner and no purpose of discovery is served by compelling the latter to perform legal research for the former. (*Alpine Mut. Water Co.* v. *Superior Court,* 259 Cal.App.2d 45, 54 [66 Cal.Rptr. 250].) Further, the request in essence seeks the legal reasoning and theories behind petitioner's contention that any sales tax deductions it took are proper. ■ A party's contention may be the subject of discovery, but not the legal reasoning or theory behind the contention. (*Burke* v. *Superior Court,* 71 Cal.2d 276, 284-285 [78 Cal.Rptr. 481, 455 P.2d 409]; *Southern Pac. Co.* v. *Superior Court,* 3 Cal.App.3d 195, 197-198 [83 Cal.Rptr. 231].)

Petitioner next argues that the information sought by interrogatory 40, relating to the deductions and adjustments taken by it in the years 1967-1971, is privileged, and therefore not subject to discovery. (Code Civ. Proc., §§ 2030, subd. (b) and 2016, subd. (b).) Petitioner primarily relies in this connection upon Revenue and Taxation Code section 7056, which states in pertinent part: ". . . it is unlawful for the board or any person having an administrative duty under this part to make known in any manner whatever the business affairs, operations, or any other information pertaining to any retailer . . . required to report to the board or pay a tax pursuant to this part, or the amount or source of income, profits, losses, expenditures, or any particular thereof, set forth or disclosed in any return, or to permit any return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person." █ While this statute by its terms appears to be directed only toward administrative officers, and does not expressly establish a privilege of the nature claimed by petitioner, it does, however, manifest a clear legislative intent that disclosures made in tax returns shall not be indiscriminately exposed to public scrutiny.

In *Webb* v. *Standard Oil Co.*, 49 Cal.2d 509, 512 [319 P.2d 621], we construed former Revenue and Taxation Code section 19282. This section provided in part that, except in tax enforcement proceedings, " '. . . it is a misdemeanor for the Franchise Tax Board, any deputy, agent, clerk, or other officer or employee, to disclose in any manner information as to the amount of income or any particulars set forth or disclosed in any report or return required under this part.' " (Although § 19282 has since been amended, the language of the present statute is substantially the same.) In *Webb* we noted that the purpose of such provisions as section 7056 is "to facilitate tax enforcement by encouraging a taxpayer to make full and truthful declarations in his return, without fear that his statements will be revealed or used against him for other purposes." (*Id.,* at p. 513.) In *Webb* we unanimously held that forcing the taxpayer himself to produce a copy of his state or federal income tax returns, which the opposing party wished to use for impeachment purposes, would effectively defeat this legislative purpose. We continued "[t]he effect of the statutory prohibition [of disclosure] is to render the returns privileged, and the privilege should not be nullified by permitting third parties to obtain the information by adopting the indirect procedure of demanding copies of the tax returns." (*Ibid.*) We have subsequently within other contexts reaffirmed the privileged nature of tax returns. (See *Aday* v. *Superior Court,* 55 Cal.2d 789, 796 [13 Cal.Rptr. 415, 362 P.2d 47], and *Crest Catering Co.* v. *Superior Court,* 62 Cal.2d 274, 277 [42 Cal.Rptr. 110, 398 P.2d 150], wherein we expressly refused to overrule *Webb.*)

Finally, in *Webb,* we made it clear that attempts to avoid the application of the privilege by indirect means could not be tolerated. (49 Cal.2d at p. 513.) Real party in interest's interrogatory 40 appears to be such an attempt. ■ While not asking either for the return itself or a copy, the question does seek information concerning specific entries in the return. To require petitioner to respond to such an inquiry would render meaningless the privilege recognized in *Webb, Aday* and *Crest Catering Co.* Assuming Revenue and Taxation Code section 7056 protects the returns themselves, it is reasonable to conclude that it must also protect the information contained in the returns. The writ of prohibition must issue as to interrogatory 40.

■ Petitioner further contends that a finding of privilege as to interrogatory 40 renders irrelevant interrogatories 41 and 42.

The test of relevancy in discovery proceedings is a broad one. ■ As we have stated in *Pacific Tel.,* "[a]n appellate court cannot reverse a trial court's grant of discovery under a 'relevancy' attack unless it concludes that the answers sought by a given line of questioning cannot as a reasonable possibility lead to the discovery of admissible evidence or be helpful in preparation for trial." (2 Cal.3d at p. 173.) ■ Interrogatories 41 and 42, in effect, invite petitioner to waive voluntarily the privilege which we recognize and uphold in this opinion. Such an inquiry meets the relevancy standard enunciated by us in *Pacific Tel.* in that it is directed toward the discovery of material that would be of significant benefit to real party in interest in trial preparation. Should petitioner elect to waive its right to bar disclosure (unlikely as that may be), the evidence thereby obtained might well be admissible.

The foregoing reasoning is fortified by our recent expressions in *Roberts* v. *Superior Court, supra,* 9 Cal.3d at pages 335-336 and *Pacific Tel. & Tel. Co.* v. *Superior Court, supra,* 2 Cal.3d at page 170, footnote 11, wherein we recognized that an objection to a discovery order on the grounds of relevancy is "of an entirely different nature than a challenge to the grant of discovery when the trial court's order allegedly violates a privilege of the petitioning party." (9 Cal.3d at p. 336.)

We indicated in those cases, as above noted, that prerogative writs are generally not appropriate procedures for the review of relevancy objections to discovery orders. Since the policy upon which *Webb* v. *Standard Oil Co.* rests (i.e., the encouragement of honest and accurate

reporting of tax data) would not be violated by compelling petitioner to answer interrogatories 41 and 42, and no valid objection appearing to these questions on relevancy grounds, the writ of prohibition is limited to interrogatory 40 alone.

It may be noted in conclusion that no attempt has been made herein to define the full ambit of the privilege considered above, nor are we called upon to determine whether under other circumstances discovery of tax returns and records would be permissible. Our decision is a narrow one, limited to the record before us.

Let a writ of prohibition issue restraining respondent superior court from compelling petitioner to answer real party in interest's interrogatory 40.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.