961 P.2d 358 (1998)
136 Wash.2d 214
Dien TRAN, Respondent,
v.
STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation, Petitioner.
No. 65132-9.
Supreme Court of Washington, En Banc.
Argued February 10, 1998.
Decided September 3, 1998.
*359 Reed, McClure by William R. Hickman, Pamela A. Okano and Petrea Knudson Reilly, Seattle, for Petitioner State Farm Fire & Casualty Co.
Adam Chanak, Seattle, for Respondent.
Merrick, Hofstedt & Lindsey, PS, Sidney R. Snyder, Ronald S. Dinning, Seattle, Amicus Curiae on Behalf of Washington Insurers.
Bryan P. Harnetiaux, Debra Stephens, Harbaugh & Bloom, Spokane, Amicus Curiae on Behalf of Washington State Trial Lawyers Association.
ALEXANDER, Justice.
We granted review of a Court of Appeals decision reversing a summary judgment in favor of an insurer, State Farm Fire and Casualty Company (State Farm), and against its insured, Dien Tran. The dispositive issue before us is whether the Court of Appeals wrongly concluded that a material factual issue existed about whether State Farm was prejudiced by Tran's refusal to provide it with relevant financial records. We hold that the Court of Appeals did err, being satisfied that an insurer suffers prejudice, as a matter of law, when its insured fails to provide it with the financial records it reasonably needs in order to complete an *360 investigation into the question of whether the insured's claim was fraudulent. We, therefore, reverse the Court of Appeals and reinstate the trial court's order granting summary judgment in favor of State Farm.
Dien Tran, a Boeing engineer, was the sole proprietor of Tran Communications. Tran operated his business of selling and servicing pagers and cellular telephones on evenings and weekends. On August 23, 1992, Tran reported to the Seattle Police Department that his place of business had been burglarized. A police officer who was dispatched to the scene of the alleged burglary surmised, after conducting an investigation, that the business had been entered through a side door. According to the investigating officer's report, Tran indicated that "[t]he inside of the business appeared normal," and that "nothing seemed out of place." Clerk's Papers (CP) at 68. Tran also told the officer that he "did not know if any [property] was missing." CP at 68.
The following day, Tran reported the burglary to his insurance carrier, State Farm. He claimed then that he had sustained property damage as well as a loss of business inventory, personal property, and business income. Two days later, a State Farm claims representative tape recorded a telephone interview she conducted with Tran. A transcript of the interview indicates that Tran told her that one of the first things he noticed when he discovered the burglary was that a display pager unit and a phone display were missing. Tran also told her that numerous other items had been stolen, including a television set, copy machine, two battery chargers, video, cassette recorder, video cassettes, computer modem and software, laser printer, program coders, and several pagers. Tran indicated that the burglar broke the alarm system and took a surveillance camera. Tran described other damage to the building, but indicated that he had not yet checked his stock room to see if additional items had been taken.
A few days later, State Farm sent a personal property inventory form to Tran and instructed him to complete it and return it to State Farm together with documentation, i.e., canceled checks, receipts, invoices or other documents that described or placed a value on the items listed on the inventory form. Tran did not submit the form to State Farm until November 23, 1992, despite receiving four telephone messages from the company urging him to complete the forms and to respond to a request for an interview and an inspection of the business premises.
The form submitted by Tran contained a list of property allegedly taken in the burglary and indicated that he was claiming damage in the amount of $12,281.75. He did not, however, provide any documentation to support his loss as has been requested by State Farm.
During the next five weeks a State Farm representative called Tran five times in an effort to obtain the requested documentation. State Farm did not receive a response to any of these calls. State Farm also sent two letters to Tran during this time informing him that it had been unable to contact him and asking him to call its representative to arrange for a recorded interview. A representative of State Farm finally reached Tran by telephone on December 29, 1992, and obtained Tran's agreement to meet with the representative on January 5, 1993 to discuss the claim, make a recorded statement, and arrange for an inspection of the business premises.
Tran failed to appear on the appointed date. Instead, Tran retained an attorney who wrote a letter to State Farm indicating that Tran would not make another recorded statement until the attorney had a chance to review the transcript of the earlier telephone interview. Tran's attorney asked State Farm to indicate if it needed supporting documentation for the personal property inventory form that Tran had previously submitted and to identify the information Tran needed to provide in order to support the claim for loss of business income.
In response to this letter, State Farm concluded that it should broaden its inquiry and investigate Tran's personal and business circumstances in order to determine if he had a motive to submit a fraudulent claim. State Farm's reasons for doing so, according to its representative, were that:

*361 (1) [State Farm's representative] had never been provided with supporting documentation for the items claimed as stolen, (2) [the representative] had never been able to meet with plaintiff to discuss his claim, and (3) [the representative] had never been able to contact plaintiff to view the premises where the alleged burglary occurred.
CP at 298.[1]
An attorney for State Farm then wrote Tran's attorney on January 15, 1993, and requested that he be provided, by January 29, 1993, with a list of documents relating to the circumstances surrounding the claimed loss as well as detailed business and personal financial information. When State Farm's attorney failed to receive a timely response to this request, he sent several letters to Tran's attorney in which he reiterated State Farm's request for documentation to support the claim as well as Tran's financial records and warned that failure to comply with the request could constitute a breach of the policy's cooperation clause and result in denial of the claim.
Tran's attorney did not respond to these letters until February 11, 1993 when he contacted State Farm's attorney via fax and indicated that documents would be provided at a later date. Tran's attorney also stated that he would contact State Farm's attorney as soon as possible to arrange for an inspection of the business premises. On February 16, 1993, Tran's attorney supplied State Farm with various documents supporting Tran's claim of property loss, including the police report and photographs that Tran had taken of the premises after the break-in. He did not, however, provide any personal or business financial records, nor did he produce any supporting documents for several items that were alleged to have been stolen, including the copy machine, television set, video cassette recorder, two battery chargers, computer modem, and surveillance camera. Furthermore, he merely submitted a copy of an owner's manual to document loss of a program coder. His claim for several cellular phones and a laser printer was supported only by copies of commercial advertisements.
State Farm continued to make efforts to contact Tran's attorney by telephone and mail in order to obtain the requested financial information and to remind him that State Farm had not been contacted about an inspection of the business premises. Finally, on March 4, 1993, more than seven months after the burglary had been reported, Tran arranged for State Farm's representative to conduct an inspection of the premises.
On March 9, 1993, Tran's attorney informed State Farm's attorney that Tran was not going to produce any financial records or tax returns and that his client would not answer questions regarding his financial situation. State Farm's attorney warned Tran's attorney that Tran's claim could be denied if he failed to provide this information.
Eventually, on March 31, 1993, Tran's attorney sent a letter to State Farm informing it that Tran was dropping his claims for software allegedly taken in the burglary and for loss of business income. Tran's attorney took the position in this letter that by dropping the latter claim, Tran's personal and business financial information was no longer relevant and, therefore, need not be disclosed. State Farm responded that it needed the financial information "as part of its investigation into the facts and circumstances of the loss." CP at 331. State Farm warned Tran that "failure to provide required information is a breach of the policy conditions and may result in denial of your client's insurance claim." CP at 331.
An examination of Tran under oath finally took place on May 26, 1993. At that time, Tran's attorney instructed Tran to decline to answer any questions about his personal or business finances or produce any financial records. Tran did, however, testify that the *362 first thing he noticed when he discovered the burglary was that a pager, a cellular phone, a copy machine, and 15 display items were missing and that a telephone was on the floor broken.
On June 16, 1993, State Farm sent Tran's attorney a letter requesting the addresses and phone numbers of certain persons Tran had identified at his examination, records of inventory purchases and sales, and a copy of an estimate for repair of the door through which the business premises had allegedly been entered. State Farm also repeated its request for financial information. Neither Tran nor his attorney responded to this letter.
Finally, on August 3, 1993, State Farm notified Tran that it was denying his claim on the basis that he had breached the policy's cooperation clause by failing to provide the requested financial information in connection with the investigation of his loss. Over a year later, Tran commenced an action against State Farm for declaratory relief, damages, and relief under the Consumer Protection Act. State Farm then moved for summary judgment. In support of its motion it submitted an affidavit of its representative who described State Farm's dealings with Tran. The affiant indicated that State Farm denied Tran's claim because it was unable to complete its investigation and could not, therefore, substantiate the extent of Tran's loss or determine whether or not Tran had submitted a false or fraudulent claim. The trial court granted State Farm's motion.
Despite agreeing with the trial court that there was no material factual issue about Tran's failure to comply with the cooperation clause of the State Farm policy, the Court of Appeals reversed the trial court, concluding that an issue of fact existed as to whether State Farm was prejudiced by Tran's breach of the policy's cooperation clause. Tran v. State Farm Fire & Cas. Co., No. 36644-1-I (Wash.Ct.App.1996). It also held that the trial court erred in concluding on summary judgment that the policy's concealment clause was breached by Tran's refusal to turn over his financial records, determining that an issue of fact existed as to whether Tran's refusal amounted to fraud.

I. May a Summary Judgment Motion be Granted in a Declaratory Judgment Action?
Tran contends that the trial court should not have granted summary judgment "at all where the plaintiff had filed for declaratory relief." Answer to Pet. for Review at 13. Because the Court of Appeals reversed the summary judgment for other reasons, it did not reach this issue. We note, preliminarily, that Tran cites absolutely no authority to support his argument that a trial court cannot grant a summary judgment motion when a party files such a motion in response to a complaint for declaratory relief. Indeed, we could resolve this issue on the basis that arguments unsupported by any authority will not be considered on appeal. See State v. Helms, 72 Wash.App. 273, 276, 864 P.2d 23 (1993) (refusing to consider arguments not supported by authority), review denied, 124 Wash.2d 1001, 877 P.2d 1287 (1994). We prefer, though, to simply take note of the provisions of CR 56(b) which provide that "[a] party against whom ... a declaratory judgment is sought may move ... for a summary judgment in his favor as to all or any part thereof." Clearly under this rule, State Farm's motion for summary judgment was a proper response to Tran's action for declaratory judgment.

II. Was Summary Judgment Proper?
CR 56(c) directs a court to grant summary judgment to a moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A material fact is one upon which the outcome of the litigation depends. Ruff v. County of King, 125 Wash.2d 697, 703, 887 P.2d 886 (1995). Summary judgment is not proper if "reasonable minds could draw different conclusions from undisputed facts, or if all of the facts necessary to determine the issues are not present." Ward v. Coldwell Banker/San Juan Props., Inc., 74 Wash.App. 157, 161, 872 P.2d 69, review denied, 125 Wash.2d 1006, 886 P.2d *363 1133 (1994). In reviewing a summary judgment motion, the appellate court stands in the same position as the trial court, and must consider all of the evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. Central Wash. Bank v. Mendelson-Zeller, Inc., 113 Wash.2d 346, 351, 779 P.2d 697 (1989).

A. Did Tran Breach the Insurance Policy's Cooperation Clause?
Insureds may forfeit their right to recover under an insurance policy if they fail to abide by provisions in the policy requiring them to cooperate with the insurer's investigation of their claim. Georgian House of Interiors, Inc. v. Glens Falls Ins. Co., 21 Wash.2d 470, 495, 151 P.2d 598 (1944); McLanahan v. Farmers Ins. Co., 66 Wash.App. 36, 40, 831 P.2d 160, review denied, 120 Wash.2d 1006, 838 P.2d 1142 (1992). The only limitation on the requirement that insureds cooperate with the insurer's investigation is that the insurer's requests for information must be material to the circumstances giving rise to liability on its part Pilgrim v. State Farm Fire & Cas. Ins. Co., 89 Wash.App. 712, 950 P.2d 479, 483 (1997). Information is material when it "concerns a subject relevant and germane to the insurer's investigation as it was then proceeding" at the time the inquiry was made. Fine v. Bellefonte Underwriters Ins. Co., 725 F.2d 179, 183 (2d Cir. 1984).
Tran concedes that he did not release his personal and business financial records to State Farm. Nevertheless he asserts that there is an issue of fact about whether he substantially complied with State Farm's requests. He claims that he satisfied the test for substantial compliance set forth in Georgian House by providing State Farm with records that established for each stolen item its cost and where it was purchased.[2] Tran asserts that his personal and business financial records are neither material nor relevant because they "would not assist State Farm in deciding whether Mr. Tran owned the items claimed, not [sic] would it help to establish the value of those items." Answer to Pet. for Review at 18. He posits, therefore, that State Farm had no legitimate reason to require production of these records.
In order to determine the scope of Tran's duty to cooperate with the insurer, we must first look to the relevant policy language. It is largely contained in section three of the conditions section of the policy, which provides:
3. Duties in the Event of Loss. You must see that the following are done in the event of loss to covered property:
. . . .
e. at our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed;
f. permit us to inspect the property and records proving the loss;
g. if requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. ...
. . . .
i. cooperate with us in the investigation or settlement of the claim;
CP at 268-69 (emphasis added). The policy also contains an additional requirement in another section of the policy:
4. Examination of Your Books and Records. We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.
CP at 284.
State Farm contends that once it had reason to broaden its investigation into Tran's motive for submitting his claim, Tran's financial records became relevant and material because they related to the issue of whether his claim was made in good faith or was fraudulent. See Pilgrim, 89 Wash.App. at *364 721-22, 950 P.2d 479. State Farm asserts that because it could not determine whether Tran's claim should or should not be paid without examining these records, the information was material to its ability to determine coverage. Pilgrim, 89 Wash.App. at 721-22, 950 P.2d 479; see also DiFrancisco v. Chubb Ins. Co., 283 N.J.Super. 601, 662 A.2d 1027, 1031 (1995).
The trial court agreed with State Farm, concluding that Tran's financial records were relevant and that "the record does not show the plaintiff substantially complied with policy provisions." CP at 219. The Court of Appeals agreed with the trial court in that regard, indicating that once State Farm had reason to broaden its inquiry to determine whether Tran's claim was fraudulent, Tran's financial records became relevant and State Farm had a contractual right to require him to turn them over to it for examination. According to the Court of Appeals, Tran's failure to turn over these relevant documents constituted a breach of the insurance policy's cooperation clause.
We agree with the trial court and the Court of Appeals that State Farm had legitimate reasons for broadening its investigation to include a motive for fraud. It is abundantly clear from the record that Tran failed to provide State Farm with any documentation at the time he made his initial claim. Moreover, he later failed to provide it with supporting documentation for all of the items that he claimed were stolen. In addition, State Farm had difficulty obtaining a meeting with Tran to discuss his claim and arrange for a view of the premises where the burglary was alleged to have occurred. Furthermore, Tran inexplicably withdrew his claim for some items that he initially indicated were stolen. He also withdrew his claim for lost business income, apparently believing that this would relieve him of his obligation to provide State Farm with his financial records. Finally, Tran provided the police and State Farm with differing stories as to what he observed when he first discovered that his store had been burglarized. In light of these circumstances, the possibility of fraud was distinct and Tran's financial records, therefore, became relevant and material to State Farm's consideration of his claim.
Tran argues, additionally, that even if we conclude that his financial records are relevant, he should be excused from producing them on the basis that his tax returns are privileged. He cites the Internal Revenue Code generally, and several cases as support for this proposition. See Premium Serv. Corp. v. Sperry & Hutchinson Co., 511 F.2d 225, 229 (9th Cir.1975); Sav-on Drugs, Inc. v. Superior Court, 15 Cal.3d 1, 538 P.2d 739, 123 Cal.Rptr. 283 (1975); Webb v. Standard Oil Co., 49 Cal.2d 509, 319 P.2d 621 (1957); Watkins v. FMC Corp., 12 Wash.App. 701, 707, 531 P.2d 505, 90 A.L.R.3d 794 (1975). The California cases cited by Tran do not support his argument here because they rely on provisions in the California tax code that preclude discovery of federal and state tax returns in certain situations. Webb, 49 Cal.2d 509, 319 P.2d 621 (construing former Cal. Rev. & Tax Code § 19282); Sav-On Drugs, 15 Cal.3d 1, 123 Cal.Rptr. 283, 538 P.2d 739 (construing Cal. Rev. & Tax Code § 7056). Significantly, Washington does not have a similar statutory provision. The other cases cited by Tran are not persuasive because in each of them the courts concluded that tax returns were not subject to discovery or admission into evidence because the returns were of questionable relevance. Premium Serv. Corp., 511 F.2d at 229; Watkins, 12 Wash.App. at 707, 531 P.2d 505. Here, as we have observed above, Tran's personal income tax returns had relevance to his personal finances and the condition of his solely-owned business.
In sum, the insurance policy in question gave State Farm the right to question Tran about "any matter" relating to his claim, including his "books and records," and to "examine and audit" his "books and records." CP at 268, 284. Tran does not dispute the fact that he refused to turn over the requested financial information and declined to answer State Farm's questions regarding his personal or business finances. In light of the fact that there is no real issue as to Tran's obligation to cooperate with State Farm's requests under the policy and the objective relevance of his financial records, *365 it can be said that no reasonable juror could conclude that Tran substantially cooperated in the investigation or settlement of his claim. His failure to cooperate, therefore, "constitutes a breach of the cooperation clause as a matter of law." Pilgrim, 89 Wash.App. at 723, 950 P.2d 479(footnote omitted).

B. Was State Farm Prejudiced By Tran's Failure to Cooperate?
An insured's breach of a cooperation clause releases the insurer from its responsibilities if the insurer was actually prejudiced by the insured's breach. Public Util. Dist. No. 1 v. International Ins. Co., 124 Wash.2d 789, 803, 881 P.2d 1020 (1994). Interference with the insurer's ability to evaluate and investigate a claim may cause actual prejudice. Canron, Inc. v. Federal Ins. Co., 82 Wash.App. 480, 491, 918 P.2d 937 (1996), review denied, 131 Wash.2d 1002, 932 P.2d 643 (1997); Felice v. St. Paul Fire & Marine Ins. Co., 42 Wash.App. 352, 360, 711 P.2d 1066 (1985), review denied, 105 Wash.2d 1014 (1986). However, prejudice is an issue of fact and will seldom be established as a matter of law. Canron, 82 Wash.App. at 491, 918 P.2d 937; Public Util. Dist., 124 Wash.2d at 804-05, 881 P.2d 1020; Felice, 42 Wash. App. at 359, 711 P.2d 1066; Pulse v. Northwest Farm Bureau Ins. Co., 18 Wash.App. 59, 62, 566 P.2d 577, review denied, 89 Wash.2d 1011 (1977). The insurer has the burden of proving that it has suffered prejudice from its insured's breach. Oregon Auto. Ins. Co. v. Salzberg, 85 Wash.2d 372, 376, 535 P.2d 816 (1975). Claims of actual prejudice require "affirmative proof of an advantage lost or disadvantage suffered as a result of the [breach], which has an identifiable detrimental effect on the insurer's ability to evaluate or present its defenses to coverage or lability." Canron, 82 Wash.App. at 491-92, 918 P.2d 937.
Here, although the Court of Appeals agreed with the trial court's conclusion that Tran breached the cooperation clause, it determined that the trial court erred in granting summary judgment in favor of State Farm on the basis that an issue of fact existed as to whether Tran's breach of the cooperation clause prejudiced State Farm. The Court of Appeals held that because State Farm had not made any payment under the policy and had not lost any subrogation rights, its inability to complete the investigation "does not represent the kind of actual prejudice necessary to warrant summary judgment." Tran, slip. op. 36644-1-I at 20.
Tran echoes this sentiment, asserting that "[a] reasonable juror could certainly find that State Farm had utterly failed to introduce evidence as to actual prejudice." Answer to Pet. for Review at 12. In his view, a reasonable person could conclude that State Farm could have completed its investigation based on a review of items he supplied to State Farm of his loss, to wit: his recorded statement taken shortly after the loss was reported, the police report, and the photos taken of the premises. Tran also asserts that he later submitted to a "thorough examination under oath, and produced every conceivable document to substantiate this loss." Answer to Pet. for Review at 12 (citations omitted).
Tran's assertion that State Farm was not prejudiced by his failure to provide financial records and tax returns, due to his eventual compliance with many of State Farm's requests, is simply a restatement of his argument that he substantially complied with State Farm's requests and, thus, did not breach the cooperation clause. As noted above, we reject that argument, concluding that his failure to provide his personal and business financial records constituted a breach of the cooperation clause. In light of that breach, State Farm needed to establish only that Tran's failure to produce these items prejudiced its ability to determine coverage, regardless of what else Tran did.
State Farm contends that once it had broadened its investigation to include Tran's potential motive for submitting a fraudulent claim, it suffered actual prejudice by virtue of Tran's refusal to provide the documents which would have allowed State Farm to complete that investigation. Without being able to examine Tran's financial records, State Farm asserts, it was faced with a Hobson's *366 choice[3] of either denying a suspected fraudulent claim without an adequate investigation, which could expose it to claims of bad faith or violation of the Consumer Protection Act,[4] or paying a suspected fraudulent claim, which would be against public policy.[5]
State Farm relies on Pilgrim v. State Farm Fire & Cas. Ins. Co., 89 Wash.App. 712, 950 P.2d 479 (1997), a case that also emanates from Division One of the Court of Appeals, as support for its contention that its inability to complete an investigation of the facts underlying Tran's claim prejudiced it as a matter of law. At issue in Pilgrim was whether the insurer was prejudiced by the failure of its insured to provide relevant financial records. Like the trial court and the Court of Appeals here, the court in Pilgrim determined that the insured breached the cooperation clause by refusing to provide its insurer with financial records made relevant by the suspicious nature of the insureds' claim. It went on to indicate that:
Without access to financial documents, State Farm could not evaluate the validity of the Pilgrims' claim. It could not decide whether the claim was covered, much less prepare a defense to the inevitable suit by the Pilgrims if it denied coverage. It could not satisfy its statutory duty to ferret out fraud. The Pilgrims' refusal to disclose relevant financial information prejudiced State Farm as a matter of law.
950 P.2d at 486.
We are in accord with the reasoning set forth in Pilgrim, and conclude that the same result is warranted here. While the Court of Appeals correctly observed here that State Farm did not suffer prejudice in the sense that it made payments or lost subrogation rights, we believe it was incorrect in concluding that State Farm was not prejudiced by its inability to complete an investigation. In our view, Tran's refusal to submit the requested financial information, an act which breached the cooperation clause and impeded State Farm's ability to investigate the claim, caused prejudice. Although the dissent characterizes the financial information that State Farm sought as a "laundry list of otherwise confidential and personally invasive `financial documents,'" Dissenting op. at 367, in our view the information it sought was material and it could not be obtained from other sources.[6] Significantly, the failure to provide this information hampered State Farm's ability to determine the validity of Tran's claim. The business of insurance companies is, after all, to provide coverage for the legitimate claims of the parties it insures. If insurers are inhibited in their effort to process claims due to the uncooperativeness of the insured, they suffer prejudice in the ways identified by State Farm and noted by the court in Pilgrim. If we were to reach any other result, we would be encouraging insureds to not cooperate and to submit fraudulent claims. Because, in the final analysis, it is uncontroverted that Tran's intransigence prevented State Farm from completing a legitimate investigation in order to determine whether or not coverage should be provided, it follows that State Farm suffered prejudice.

III. Other Summary Judgment Issue
Finally, we briefly address State Farm's contention that the Court of Appeals erred in holding that it had to prove that Tran committed both fraud and concealment in order to show that he breached the insurance policy's *367 concealment/fraud clause. Although there is some merit to State Farm's contention that case law and the plain language of the policy[7] establish that fraud or concealment are independent means of voiding this insurance policy,[8] because we have held above that Tran's breach of the cooperation clause caused prejudice to State Farm and rendered the policy void, we need not decide this issue.

IV. Conclusion
We reverse the Court of Appeals determination that the trial court erred in granting summary judgment. Although we agree with the dissent that an insurance company should not have license to burden an insured with demands for items that are immaterial, this is not a case where the insurance company pushed the envelope of permissible discovery. In our view, Tran breached the cooperation clause by refusing to honor State Farm's reasonable request for relevant and material financial records and hold that, as a matter of law, this breach prejudiced State Farm by preventing it from completing its investigation to determine if its insured's claim was fraudulent. Because we find in favor of State Farm, we deny Tran's request for attorney fees.
DOLLIVER, SMITH, GUY, MADSEN and TALMADGE, JJ., concur.
SANDERS, Justice, (dissenting).
State Farm claims entitlement to a laundry list of otherwise confidential and personally invasive "financial documents," asserting these documents (and Mr. Tran's oral examination about those documents in an examination under oath) might provide evidence that Mr. Tran had a "motive [to] submit[ ] a fraudulent claim." Br. of Resp't at 8. However, according to State Farm, "whether the insured actually submitted a fraudulent claim is not the issue." Br. of Resp't at 24. State Farm summarized its argument in its brief:
Under the circumstances, Tran Comm's claim might have been fraudulent. Or it might not have been. State Farm could not tell because Tran Comm deliberately refused to produce the documents or answer the questions that would have assisted State Farm in making this determination. Under these circumstances, State Farm was justified in denying the claim for breach of the policy conditions.
Id. at 18.
To begin we must make some careful factual distinctions as to what Tran produced and what, on the advice of counsel, he refused to produce.
Eventually Tran did produce all documents he claimed to have in his possession regarding the circumstances of the theft as well as the existence and value of the items he claimed were stolen. Additionally Tran answered all questions put to him by his insurer, which he said he could answer, in a telephone interview shortly after the loss and again several months later in an 87-page examination under oath.
The insurance company claims, and I surmise it is probably true, Mr. Tran did not come forward with this discovery in a timely manner, notwithstanding Tran's claim that some of the delays were justified by factors beyond his control such as his difficulty with the language, his absence from Tran Comm during normal business hours because of his full-time employment as a Boeing engineer, etc. I would also concede these circumstances, and others, justified State Farm's suspicion of the validity of this claimalthough *368 an insurer need not justify its suspicions to this court as a condition precedent to investigating them.
As to what Tran refused to produce, State Farm sent Tran a comprehensive list of many requested documents in January 1993. This was at a time when Tran was claiming a loss of business income. Tran concedes some of the documents later withheld would be relevant for that purpose; however, even after Tran dropped the loss of income claim State Farm did not reciprocally delete the disputed list of items from its discovery request.
Ultimately the sticking point was a long list of disputed documents that State Farm demanded but which Tran refused to produce, stating:
I have substantiated my ownership of the items [stolen], their actual cost to me, and whom they were purchased from. State Farm has the invoices, the cancelled checks, photos, sworn testimonyeverything reasonably necessary to prove the claim. Yet they still will not pay the claim. I am not a criminal. I have worked hard all my life, in Vietnam and in this country. I resent being treated so unfairly and with such suspicion just because I am Vietnamese.
Clerk's Papers (CP) at 49.
The items Tran refused to produce are as follows:
8. Your client's personal income tax returns for the last four years.
. . . .
12. Any correspondence or written communication with any creditor or other person to whom your client owed money in the 12 months immediately preceding the loss, including but not limited to any notice of delinquency, writs of execution, notices of garnishment, or liens, summons, and complaints, or threats of litigation received by your client in the 12 months prior to the loss.
13. W-2 forms, K-1 or any other records your client may have indicating your client's employment for the last four years prior to the loss.
. . . .
15. Any and all documents reflecting savings accounts, checking accounts, money market accounts, money management accounts, other investment accounts or otherwise reflecting assets held by your client for the 12 months prior to the loss.
16. All bank statements for the 12 months immediately preceding the loss on any account held by your client, or on which your client was a signor.
17. All statements for the 12 months immediately preceding the loss on any and all charge cards held by your client.
18. A list of all your client's debts in excess of $5,000 owed as of the date of loss. The list should include:
a. The creditors;
b. The date the debt was incurred;
c. The original amount of indebtedness;
d. The amount owed at the time of the loss;
e. The original origin or reason for the debt.
19. The tax returns of Tran Communication for the last four years.
. . . .
21. The following records of Tran Communication from the commencement of the business through the present:
a. All canceled checks and bank statements;
b. All receipts and statements for any and all invoices or purchases by the business;
c. All inventories;
d. All business and occupation tax records;
e. All receipts and other records of sales;
f. All "end of sale" daily reports;
g. All profit and loss statements and balance sheets for the business;
h. All sales journals, recap reports, cash register tapes, sales invoices, and other records that document the rental or sale of inventory;
i. All bank statements with canceled checks, credit card receipts, and deposit *369 slips for accounts used or connected with the business;
j. All purchase invoices, purchase journals, exchange slips or transfer slips, sales receipts, or other documents showing the purchase, sale, or transfer of any inventory;
k. W-2 forms for all employees including names, addresses, and telephone numbers for previous and current employees.
CP at 314-17 (Ex. C-1).
What the majority, or State Farm, fails to articulate is how the items on this list, if produced, could prove "fraud."
To establish fraud, one must prove, by clear, cogent, and convincing evidence (1) representation of an existing fact; (2) materiality; (3) falsity; (4) speaker's knowledge of its falsity; (5) speaker's intention that it shall be acted upon by the plaintiff; (6) plaintiff's ignorance of falsity; (7) reliance; (8) right to rely; and (9) damages. Chen v. State, 86 Wash.App. 183, 188, 937 P.2d 612 (1997) (citing Hoffer v. State, 110 Wash.2d 415, 425, 755 P.2d 781 (1988)).
I agree with State Farm that it should not be required to prove fraud to deny the claim if "it was the insured who deliberately refused to provide it with the very information needed to determine whether the claim was fraudulent." State Farm's Supplemental Br. at 15. However, the question still remains: How could the documents withheld provide "information needed to determine whether the claim was fraudulent"?
Perhaps something on the list might relate to a particular item claimed by Tran to have been stolen; however, as I understand the facts, State Farm would not narrow or justify its demand on this ground. Neither did Tran intentionally withhold documents specifically relating to the theft or loss. No, the dispute here is not over discovery about items allegedly stolen, nor the facts of the theft, but rather disclosure of the intimate details of Tran's economic life otherwise completely unrelated to the loss in question.
Nor are we here concerned with demonstrating Tran allegedly sustained a loss arguably impossible for him to actually sustain given his economic circumstances. This man is a Boeing engineer with a reasonable income and borrowing power obviously making the ownership of $7,900 worth of inventory and business items well within the realm of the possible. A different situation might have arisen if the claimed loss were much more substantial; however, such a justification for broad economic discovery simply does not exist under these facts.
Had Tran contractually agreed to produce some disputed document which he later refused to produce, his claim might properly be dismissed. However, I can find no specific contractual duty to produce any of the disputed documents within the four corners of this insurance contract.
The policy does require Tran to provide "a description of the lost or damaged property" and, at the insurer's request, provide "complete inventories of the damaged and undamaged property" with "quantities, costs, values and amount of loss claimed," and allow the insurer to inspect the "records proving the loss." CP at 268 (Policy, § I Conditions, para. 3(b), (e), and (f)). But Tran complied with this duty.
A further clause, however, requires the insured to "cooperate" with his insurer in the investigation of the claim and an additional provision allows the insurer to "examine and audit your books and records as they relate to this policy...." CP at 269 (Policy § I Conditions, para. 3(i)); CP at 284 (Policy § I and § II Common Conditions, para. 4).
Prior case law from this jurisdiction construes these and similar clauses to permit discovery only of that which is material to a claim, not as a license to burden the insured, or invade his privacy, with demands for the immaterial.[1] We must protect insureds from *370 company demands which push the envelope of permissible discovery to simply create a "noncooperation" pretext to deny the claim.
The reason behind this requirement as it relates to the usual cooperation clause was well stated by the North Carolina Supreme Court which explained the cooperation clause
does not grant to the insurer an unlimited right to roam at will through all of the insureds' financial records without the restriction of reasonableness and specificity. Such an obligation would subject an insured to endless document production, including every check they might have tendered and every automatic teller withdrawal they might have made, as the insurer fished for evidence on which to build an arson defense.
Chavis v. State Farm Fire & Cas. Co., 317 N.C. 683, 346 S.E.2d 496, 499 (1986).[2] State Farm's demand seems very similar to that which was reviewed in North Carolina.
Furthermore, as the majority notes, the rule of materiality is plainly the rule in this jurisdiction. See Majority at 363 ("the insurer's requests for information must be material to the circumstances giving rise to liability on its part."); see also Pilgrim v. State Farm Fire & Cas. Ins. Co., 89 Wash.App. 712, 719-20, 950 P.2d 479 (1997) ("the insurer can only require an insured to provide answers to material requests, that is, matters concerning a subject reasonably relevant and germane to the insurer's investigation.... Put another way, an insured does not need to supply information unrelated to the policy or investigation of the claim.").[3]
So we return to the claimed relation of a man's wealth to his honesty. What if it were shown that Tran were heavily in debt? What if he lost money in his business? What if it were shown he diverted, at a sacrificial level, his earned income to the support of loved ones who remained in the land of their birth despite the ravages of communist tyranny? Does this mean Tran faked the loss or even raise an inference to that effect?
What if the disclosure revealed Tran as a man of means, debt free, and prosperous? Does this mean he would not seek to increase his wealth even further by filing a dishonest claim? The annals of this court and human experience seem to stand in opposition to this inference as well.
Had Tran produced the requested financial documents the insurance company would be no closer to establishing fraud than it is without the documents.
I disagree with the majority's position that Tran's "failure to provide this information hampered State Farm's ability to determine the validity of Tran's claim." Majority at 366. Honesty dwells in the heart, not the wallet.
JOHNSON, J., concurs.
NOTES
[1] In its brief to this court, State Farm elaborated on its reasons for suspecting fraud. It pointed out that Tran dropped his claim for software that had initially been listed as stolen, as well as his claim for lost business income. State Farm also indicated that its change of position was prompted by the fact that Tran provided the police and State Farm with differing stories as to what he observed when he first discovered that his store had been burglarized. State Farm's Supplemental Br. at 12-13.
[2] As noted above, Tran did not provide State Farm with proof of ownership and value for certain items.
[3] "[A]n apparent freedom to take or reject something offered when in actual fact no such freedom exists: an apparent freedom of choice where there is no real alternative." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1076 (3d ed.1986).
[4] See, e.g., WAC 284-30-330(4) (" Refusing to pay claims without conducting a reasonable investigation" is an unfair or deceptive act in the business of insurance.); Industrial Indem. Co. of the Northwest, Inc. v. Kallevig, 114 Wash.2d 907, 917, 792 P.2d 520, 7 A.L.R.5th 1014 (1990) (holding that an insurer may not deny coverage based on speculation or conjecture).
[5] We note that the Washington Legislature has recently enacted RCW 48.30A.045, which requires insurance companies to institute and maintain antifraud plans to combat the problems associated with the presentation of false claims. See also RCW 48.30A.005.
[6] The items that Tran refused to provide to State Farm are fully described in the dissent at pages 368 through 369.
[7] The insurance policy contained the following provision:

"3. Concealment, Misrepresentation or Fraud. This policy is void in any case of fraud by you as it relates to the policy at any time. It is also void if you or any other insured intentionally conceal or misrepresent a material fact concerning:
". . . .
"d. a claim under this policy."
CP at 284 (emphasis added).
[8] See, e.g., McDonald v. State Farm Fire & Cas. Co., 119 Wash.2d 724, 734, 837 P.2d 1000 (1992) (courts should interpret the policy in a way that gives effect to each provision). There is also case authority which indicates that an insured's concealment may invalidate an insurance policy without proof of fraud. St. Paul Mercury Ins. Co. v. Salovich, 41 Wash.App. 652, 655-57, 705 P.2d 812 (holding that concealment is a different means to void a policy than fraud), review denied, 104 Wash.2d 1029 (1985).
[1] The Uniform Declaratory Judgments Act invoked by Tran provides an appropriate mechanism to resolve what disputed documents must be produced under the contract of insurance. See RCW 7.24.020 ("A person interested under a... written contract ... may have determined any question of construction ... arising under the ... contract ... and obtain a declaration of rights ... thereunder."). I am at a loss to explain why Tran cannot seek the aid of the court to determine his disputed contractual duties without losing the benefit of the insurance coverage for which he previously paid a premium. The majority's answer to this claim (summary judgment may be had in declaratory judgment actions) is really no answer. Would it not be a better alternative to allow Tran the opportunity to comply rather than dismiss his claim if all or some of these documents are determined by the court to be subject to production?
[2] See also Happy Hank Auction Co. v. American Eagle Fire Ins. Co., 286 A.D. 505, 509, 145 N.Y.S.2d 206, 211 (1955), aff'd in part, modified in part on other grounds, 1 N.Y.2d 534, 154 N.Y.S.2d 870, 136 N.E.2d 842 (1956) (insurance companies "have no license to harass [their insured] with aimless questions and demands for documents, or with random shots in the dark.").
[3] See also 8 John Alan Appleman and Jean Appleman, Insurance Law and Practice § 4772, at p. 215-19 (1981) ("A breach of the cooperation clause by the insured will operate to relieve the insurer of liability under the policy. But a lack of cooperation in an insubstantial or immaterial matter would not have such an effect." (footnotes omitted)); 44 Am.Jur.2d, Insurance § 1433, at 382 (1982) ("While a cooperation clause may require the insured, when requested for such information, to give full particulars of the accident, he need not go into unnecessary details or make an exhaustive investigation of the circumstances attending the accident.").