[No. 25160-4-II.   Division Two.   January 19, 2001.]

LINDA HERMAN, *Appellant*, v. SAFECO INSURANCE COMPANY OF AMERICA, *Respondent*.

*Timothy L. Healy* (of *Benjamin Pollock Healy*), for appellant.

*Thomas Lether* and *Mark E. Mills* (of *Clarke, Bovingdon, Cole, Mills & Lether, P.C.*), for respondent.

Quinn-Brintnall, J. — Linda Herman appeals a superior court order granting her insurer, Safeco Insurance Company, summary judgment. Safeco made several requests of Herman to provide documentation in support of her fire and theft claims. Herman did not comply with the requests and Safeco denied her claims. The lower court found that Herman breached her duty to cooperate with Safeco in its investigation, prejudicing Safeco and thereby relieving Safeco of liability. We affirm.

## FACTS

Herman had a renter's insurance policy with Safeco. The claims section of the policy contained a standard cooperation clause that required Herman to provide Safeco with records and documents and to "submit to examinations under oath and subscribe the same . . . ." as often as reasonably required. Clerk's Papers at 176.

Herman filed an insurance claim for property loss with Safeco after a fire damaged the home she was renting on May 31, 1996. Several days later she submitted a claim for loss due to the theft of items that she alleged were stolen from the home after the fire. The amount of her claim was for the policy limits, at least $42,000. Safeco paid Herman emergency living expenses for the loss of use of the residence and began its investigation.

Safeco came to suspect that Herman's claims were overstated and perhaps even fraudulent. Safeco had reason to believe, for example, that Herman overstated her living expenses following the fire. Herman had failed to pay her previous month's rent and was in the process of being evicted. Before the eviction was complete, Herman notified her landlady that she would be moving on June 1, 1996. Although it was the day before she was scheduled to move, Herman had packed very little, suggesting a possible motive for insurance fraud. Moreover, Safeco had conflicting information about whether personal property she claimed to have been damaged or destroyed was even present in the house at the time of the fire or alleged theft.

Safeco requested that Herman submit to an examination under oath and produce more detailed information that supported her claims in advance of the examination. Safeco made the request on August 21, 1996, through Herman's attorney.

Herman submitted to an examination under oath on October 10, 1996. During the examination Herman named several acquaintances who may have been able to corroborate her whereabouts on the date of the fire. She failed,

however, to produce any of the documentation in advance as requested. On October 16, 1996, Safeco again requested documentation and information so that it could "conclude its coverage investigation." Safeco requested that the items be provided by October 31, 1996. Safeco did not receive the items by October 31, 1996.

On November 8, 1996, Safeco again requested the information and asked that Herman review the transcripts of her examination under oath, note any typographical or spelling corrections, and return the correction page and the signature page to Safeco. Safeco requested the items by November 15, 1996. Safeco did not receive the items by November 15, 1996.

On December 9, 1996, Safeco received a short letter from Herman's attorney with an IRS Form 4506 Request for Copy or Transcript of Tax Form (but not tax returns), two invoices for purportedly damaged or stolen property amounting to approximately $1,600, and a contents-only inventory list handwritten by Herman.[1]

On December 20, 1996, Safeco denied Herman's claim on the basis that Herman misrepresented and concealed facts, failed to cooperate in the investigation, and failed to sign the examination under oath.

Herman subsequently hired a second attorney, who wrote a letter in May 1997 to Safeco requesting a specific list of items it needed to satisfy Herman's claims. Safeco directed the attorney back to its October 16, 1996 letter. Herman did not submit any additional information. On May 29, 1997, Herman sued Safeco for denying her claims.

After filing suit, Herman claimed that she gave her attorney everything that was asked for that was not destroyed in the fire. Specifically, she stated that she provided her attorney "the names and addresses of witnesses; a copy

---

[1] The contents-only inventory list in this case describes items lost or damaged including location, quantity, original price, age, place of purchase, and replacement cost.

of the lease agreement [for the home she lived in immediately following the fire]; the information . . . concerning the prior theft claim; tax information; [and the documents provided to Safeco on December 9]." Clerk's Papers at 265.

Her first attorney had no independent recollection of the details of the case, but testified in his deposition that it would have been his standard practice to forward an insurer's correspondence to his client and to forward any information his client provided to the insurer.[2]

The trial court granted Safeco summary judgment dismissing Herman's claim. Herman appeals.

## ANALYSIS

■ In reviewing an appeal from a summary judgment, the reviewing court is in the same position as the trial court:

> On appeal of summary judgment, the standard of review is de novo, and the appellate court performs the same inquiry as the trial court. *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 197-98, 943 P.2d 286 (1997). When ruling on a summary judgment motion, the court is to view all facts and reasonable inferences therefrom most favorably toward the nonmoving party. *Weyerhaeuser Co. v. Aetna Cas. & Sur. Co.*, 123 Wn.2d 891, 897, 874 P.2d 142 (1994). A court may grant summary judgment if the pleadings, affidavits, and depositions establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995); *see also* CR 56(c).

*Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).

■ The party opposing a motion for summary judgment

---

[2] Herman states that she "fully cooperated" with Safeco in other ways, including giving two recorded statements and one deposition. The only Herman deposition in the record is the one she gave after she filed suit and after the denial of coverage.

"may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value . . . [T]he nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists." *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

■ Summary judgment for the insurer is proper when an insured breaches an insurance policy's cooperation clause and the insurance company is prejudiced as a result. *Dien Tran v. State Farm Fire & Cas. Co.*, 136 Wn.2d 214, 224, 228, 961 P.2d 358 (1998).

1. Herman breached the insurance policy's cooperation clause.

■ The policy states that an insured must, as often as Safeco reasonably requires, "provide [Safeco] with records and documents [it] request[s] . . . [and] submit to examinations under oath and subscribe the same." Clerk's Papers at 10. Under the terms of the policy Herman was required to cooperate with Safeco, i.e., provide Safeco with relevant information it reasonably requested, and to submit to and sign the examination under oath.

Viewing the evidence in a light most favorable to Herman, Safeco requested documentation and information substantiating Herman's $42,000 claim and requested that Herman review and sign the examination under oath. Herman provided Safeco with receipts amounting to approximately $1,600 and her handwritten, contents-only, inventory list. Herman did not produce tax returns, any other invoices or receipts, names and addresses of material witnesses, or sign the examination under oath.

It is uncontroverted that Safeco never received the names, addresses, and phone numbers of material witnesses and financial data including tax returns and proof of income.[3]

---

[3] Herman claims that she should be excused from compliance with the cooperation agreement. She alleges that she provided the requested information

We conclude that there is no real issue as to Herman's obligation to cooperate with Safeco's requests under the policy and no reasonable trier of fact could conclude that Herman cooperated in the investigation or settlement of the claim before Safeco denied it on December 20, 1996. Her failure to cooperate, therefore, constitutes a breach of the cooperation clause as a matter of law. *See Dien Tran*, 136 Wn.2d at 228; *Pilgrim v. State Farm Fire & Cas. Ins. Co.*, 89 Wn. App. 712, 723, 950 P.2d 479, 483 (1997).

2. Safeco was prejudiced as a matter of law.

Herman claims that her subsequent deposition and the fact that Safeco, through its own independent investigation, obtained a copy of her rental agreement negated any prejudice that she may have caused by failing to provide the records requested and precludes the trial court from granting Safeco's summary judgment. As the court in *Dien Tran* observed, this claim is simply a restatement of the argument that the insured substantially complied with the insurance company's requests and did not breach the cooperation clause:

> Tran's assertion that State Farm was not prejudiced by his failure to provide financial records and tax returns, due to his eventual compliance with many of State Farm's requests, is simply a restatement of his argument that he substantially complied with State Farm's requests and, thus, did not breach the cooperation clause. As noted above, we reject that argument, concluding that his failure to provide his personal and business financial records constituted a breach of the cooperation clause. In light of that breach, State Farm needed to establish only that Tran's failure to produce these items prejudiced its ability to determine coverage, regardless of what else Tran did.

*Dien Tran*, 136 Wn.2d at 229.

■ Generally, prejudice is an issue of fact seldom estab-

---

to her attorney and that the responsibility for failing to provide the requested documents then shifted to him. But Herman is bound by the acts of her original attorney. The general rule is that "the relation of an attorney to his client is one of agency . . . ." 7A C.J.S. *Attorney & Client* § 180, at 282 (1980).

lished as a matter of law. *Dien Tran*, 136 Wn.2d at 228. The insurer has the burden of proving that it was prejudiced by the insured's breach. *Dien Tran*, 136 Wn.2d at 228. "Claims of actual prejudice require 'affirmative proof of an advantage lost or disadvantage suffered as a result of the [breach], which has an identifiable detrimental effect on the insurer's ability to evaluate or present its defenses to coverage or liability.'" *Dien Tran*, 136 Wn.2d at 228-29 (alteration in original) (quoting *Canron, Inc. v. Federal Ins. Co.*, 82 Wn. App. 480, 491-92, 918 P.2d 937 (1996), *review denied*, 131 Wn.2d 1002 (1997)).

Prejudice may be determined as a matter of law, however, where from the pleadings, affidavits, etc., there exists no genuine issue of material facts. *Or. Auto. Ins. Co. v. Salzberg*, 85 Wn.2d 372, 377, 535 P.2d 816 (1975); *see also Albee v. Farmers Ins. Co. of Wash.*, 92 Wn. App. 866, 876, 967 P.2d 1 (1998) (noting that insured's refusal to submit to physical examination was prejudicial because it hampered insurer's ability to determine whether it should pay personal injury protection (PIP) benefits), *review denied*, 137 Wn.2d 1027 (1999).

In two recent cases, the reviewing court found prejudice as a matter of law where the insured failed to cooperate with insurance investigators. In *Dien Tran*, the insured's refusal to provide financial information caused prejudice because it "impeded [the insurer's] ability to investigate the claim." *Dien Tran*, 136 Wn.2d at 231. The court noted that "[t]he business of insurance companies is, after all, to provide coverage for the legitimate claims of the parties it insures. If insurers are inhibited in their effort to process claims due to the uncooperativeness of the insured, they suffer prejudice" because the insured's intransigence prevents the insurer from completing a legitimate investigation to determine whether it should provide coverage. *Dien Tran*, 136 Wn.2d at 231-32.

In *Pilgrim*, the insureds refused to give the insurer financial documents reasonably requested as part of an investigation into the insureds' theft claim. The court held that the insurer "was prejudiced [as a matter of law] by its

inability to complete its investigation of the facts underlying the [insureds'] claim." *Pilgrim*, 89 Wn. App. at 725.

> Without access to financial documents, [the insurer] could not evaluate the validity of the [insureds'] claim. It could not decide whether the claim was covered, much less prepare a defense to the inevitable suit by the [insureds] if it denied coverage. It could not satisfy its statutory duty[4] to ferret out fraud.

*Pilgrim*, 89 Wn. App. at 725.

Herman argues that Safeco was not prejudiced because it was ultimately able to contact "virtually all relevant witnesses" even without Herman's cooperation.

Herman relies on *Oregon Automobile Insurance Co.* and *Public Utility District No. 1 v. International Insurance Co.*, 124 Wn.2d 789, 881 P.2d 1020 (1994) (*PUD No. 1*), to support her claim that Safeco has failed to show any prejudice. In *Oregon Automobile Insurance Co.*, the insured, after filing a false automobile insurance claim, provided his insurer a complete statement of the circumstances surrounding the accident. 85 Wn.2d at 373-74. The court held that "nothing in the record" supported the insurer's contention that it was prejudiced. *Or. Auto. Ins.*, 85 Wn.2d at 377.

In *PUD No. 1*, the court held that the insured's settlement without the consent of its insurers created a question of fact concerning prejudice to the insurers. The court-supervised settlement had been found to be fair and reasonable, the overall liability was enormous, and the insurers' policies covered a relatively small portion. *PUD No. 1*, 124 Wn.2d at 805. The cases Herman relies on are factually and legally dissimilar.

Herman argues that her failure to sign her examination under oath did not prejudice Safeco. If Herman's only omission were her failure to sign the examination under oath, her submission to the examination could constitute

---

[4] Washington State requires that insurance companies establish procedures to do more to root out fraud, including reporting fraud. RCW 48.30A.045-.050, .065 (as noted in *Pilgrim*, 89 Wn. App. at 719 & n.32, 722 & n.41).

substantial compliance with that policy's provision. *See Barbour v. St. Paul Fire & Marine Ins. Co.*, 101 Wash. 46, 171 P. 1030 (1918) (court found substantial compliance when insured submitted to examination under oath, but failed to sign it until after suit filed).

■ We hold, however, that Safeco was prejudiced as a matter of law. Taken as a whole, Herman's actions and omissions hindered Safeco's ability to investigate Herman's claims. Herman's intransigence and her failure to provide information accessible to her and not destroyed in the fire (e.g., the lease option agreement on her new residence) justified Safeco's conclusion that Herman had breached the policy; Herman's failure to provide financial documents prejudiced its ability to conduct a thorough investigation.

## CONCLUSION

The record presents no genuine issue of material fact on whether Herman breached the policy's cooperation clause or whether this breach prejudiced Safeco. Summary judgment was proper for Safeco.

Affirmed.

SEINFELD and HOUGHTON, JJ., concur.