**IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON**

GEORGE ARTEM,

              Appellant,

              v.

KING COUNTY DEPARTMENT OF
ADULT & JUVENILE DETENTION,

              Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 78808-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: April 22, 2019

MANN, A.C.J. — Pro se appellant George Artem filed suit against the King County Department of Adult & Juvenile Detention (DAJD), asserting multiple causes of action arising from his incarceration at the King County Correctional Facility Solitary Housing Unit. The trial court dismissed Artem's claims on summary judgment. We affirm.

<u>FACTS</u>

On September 6, 2014, police arrested George Artem for attempted kidnapping in the second degree after he grabbed an eight-year-old girl who was playing at a park in Kirkland. Artem was booked into the King County Correctional Facility (KCCF). At the Jail Health Services (JHS) intake screening, Artem indicated that he had a history of bipolar disorder and was currently taking Zyprexa, an antipsychotic medication. He stated that he received mental health care through Harborview Medical Center and that

he had been hospitalized in 2007 for psychiatric issues. The intake nurse observed that Artem was calm, cooperative, and speaking clearly. After verifying Artem's diagnosis with Harborview, the nurse prescribed a daily dose of Zyprexa, scheduled a mental health examination, and cleared him to be housed in the general population.

On the afternoon of September 7, Artem began to exhibit disruptive behavior. He blocked the dayroom door, argued with other inmates, and yelled and cursed at the corrections officer. Artem was subsequently removed from the general population and placed in a single occupancy cell in predisciplinary housing. That evening, Artem refused to take his Zyprexa.

On September 8, a corrections officer reported that Artem was staring, not speaking, and throwing items out of his cell. That evening, Artem again refused to take his Zyprexa and requested melatonin instead. When told that JHS does not prescribe melatonin, Artem asked to be prescribed lithium. The nurse reported that although Artem made occasional odd statements, he did not appear to be delusional. She placed a referral to psychiatric services for review of his medication refusal.

On September 9, 2014, DAJD staff and corrections officers reported that Artem had been exhibiting increasingly erratic and bizarre behavior. The nurse assessed that Artem appeared to be having a mental health crisis. Accordingly, JHS transferred Artem from predisciplinary housing to "yellow" level psychiatric isolation housing.[1] Artem

---

[1] KCCF has three levels of psychiatric housing based on mental health symptoms and level of functional impairment. "Green" level housing is for inmates who exhibit active mental health symptoms and moderate functional impairment. "Yellow" level housing is for inmates who exhibit active mental health symptoms and severe functional impairment. Inmates at this level who present significant security concerns or are unable to meaningfully engage with others may be placed in "yellow isolation" housing. Inmates at risk of serious self-harm in the immediate future are placed in "red" level housing.

agreed to release his medical records to his mother and his attorney. That evening, Artem again refused to take his Zyprexa.

On September 10, 2014, Artem exhibited signs of acute psychosis during his initial mental health evaluation. The JHS psychiatric evaluation specialist made a provisional diagnosis of "Bipolar I Disorder, Manic" and concluded that Artem should remain in yellow-level psychiatric isolation for his safety and the safety of others. Later that day, a JHS psychiatrist confirmed Artem's diagnosis. She discontinued the Zyprexa and prescribed a twice-daily dose of lithium, but Artem refused to take it.

On September 12, a JHS psychiatric evaluation specialist met with Artem. Artem's cell was wet and dirty, and he was naked, agitated, and "floridly psychotic." The evaluator scheduled a follow up appointment and recommended that Artem remain in yellow-level isolation housing.

On September 14, a JHS psychiatrist determined that Artem's condition had deteriorated significantly, and that he was "gravely disabled" and "a danger to others." She recommended a Harper hearing to determine whether Artem should be involuntarily medicated. [2]

The Harper hearing took place on September 19. The committee concluded that Artem was at an increased risk of harm to others as a result of his mental disorder, that his capacity to meet his basic health needs was impaired, and that he was gravely disabled. Accordingly, the committee found that Artem should be required to take antipsychotic medication for 14 days.[3] That evening, Artem was placed in a restraint

---

[2] Washington v. Harper, 494 U.S. 201, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990).
[3] Artem received notice prior to the hearing, and he and his lay advocate were present at the hearing. Artem refused to accept a copy of the hearing decision, so a psychiatric evaluation specialist

chair and given an injection of medication. After that, Artem began taking his medication orally when offered. His condition gradually improved.

On October 6, following a second Harper hearing, the committee decided not to extend the involuntary medication order. Artem subsequently agreed to return to yellow-level group housing. On October 13, he was transferred to green-level psychiatric housing. On October 28, the antipsychotic medication was discontinued and Artem was prescribed only lithium. On November 18, 2014, Artem was released from the KCCF.

On December 18, 2014, Artem attended an opt-in hearing for King County District Court Regional Mental Health Court.[4] After Artem agreed to plead guilty to a misdemeanor charge of assault in the fourth degree, the court sentenced him to a 24-month suspended sentence with credit for time served and 24 months of supervised probation, on the condition that he abide by all mental health court conditions. The State then dropped the felony charge of attempted kidnapping in the second degree. Artem was generally compliant with the conditions of mental health court. His case was closed on December 13, 2016.

On September 6, 2016, Artem filed a pro se complaint against King County DAJD, seeking $150,000,000 in damages arising from loss of economic opportunity, permanent damage to his good name, mental and psychological duress, and inhumane treatment while in the custody of the State of Washington. Artem's complaint was based on the following factual allegations:

---

appealed the decision on his behalf. The head of JHS psychiatric services, Dr. Michael Stanfill, reviewed the record and affirmed the decision.

[4] Defendants with certain mental illnesses who agree to comply with a treatment plan may be eligible to opt into mental health court.

3.1 That George Artem was booked into King County Correctional Facility on 9.06.14 having been charged with the crime of attempted kidnapping 2nd

3.2 That on or about 9.07.14 was placed into the King County Correctional Facility Solitary Housing Unit

3.3 That as a result of being placed into solitary custody Mr. Artem suffered what is commonly referred to as a "manic episode"

3.4 That Mr. Artem served 74 consecutive days in jail with an additional 14 days served while under the custody of King County Regional Mental Health Court.

On September 20, 2016, Artem filed a motion for preliminary injunctive relief regarding construction of a new police complex in north Seattle. On September 29, 2016, Artem filed a motion for summary judgment, arguing that he was entitled to an award of damages because King County (1) failed to timely serve its answer, (2) damaged his good name, (3) caused him to suffer mental and psychological duress while in solitary confinement at KCCF, (4) forced him to spend excessive time in custody, and (5) subjected him to inhumane treatment while in solitary confinement. He also reiterated his request for injunctive relief. In support of his motion for summary judgment, Artem attached several unauthenticated documents.

On February 28, 2017, King County filed a cross-motion for summary judgment. Artem did not file a response to King County's motion. Rather, on March 24, 2017, seven days before the summary judgment hearing, Artem filed an amended motion for summary judgment. The amended motion included several new allegations not previously raised, as well as a request to maintain the suit as a class action.

On March 31, 2017, the trial court granted summary judgment to King County, denied Artem's motion for summary judgment, and dismissed his claims with prejudice. The trial court also denied Artem's subsequent motion for reconsideration.

On March 16, 2018, Artem filed a motion on the merits under RAP 18.14(a) seeking direct review at the Washington Supreme Court. On May 4, 2018, a Washington Supreme Court commissioner denied Artem's motion, ruling that Artem had failed to show that the trial court clearly and reversibly erred when it dismissed his action. On June 18, 2018, Artem filed a motion for en banc hearing, which King County opposed. On August 7, 2018, the Washington Supreme Court transferred Artem's appeal to this court pursuant to RAP 4.2.

## ANALYSIS

We review summary judgment orders de novo. Seybold v. Neu, 105 Wn. App. 666, 675, 19 P.3d 1068 (2001). Summary judgment is proper if, after viewing all facts and reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c); Elcon Const. Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012). The moving party bears the initial burden of showing the absence of an issue of material fact. If the moving party meets this initial showing and is a defendant, the burden shifts to the plaintiff. Young v. Key Pharmaceuticals, Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

A party opposing a motion for summary judgment may not rely on speculation, argumentative assertions that unresolved factual issues remain, or its affidavits considered at face value. Rather, "the nonmoving party must set forth specific facts that

sufficiently rebut the moving party's contentions and reveal that a genuine issue as to a material fact exists." Herman v. Safeco Ins. Co. of Am., 104 Wn. App. 783, 787-88, 17 P.3d 631 (2001). In so doing, the nonmoving party "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value." Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986). If the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,'" summary judgment is proper. Young, 112 Wn.2d at 225 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

Artem contends that the superior court erred in dismissing his complaint on summary judgment. But Artem presented no competent, admissible evidence showing a genuine issue of material fact regarding any of the claims raised in his complaint or addressed in King County's motion for summary judgment. There appears to have been no discovery. Nor did Artem attempt to support his allegations with affidavits or offers of proof from witnesses or experts who could substantiate his claims. "Bare assertions that a genuine material [factual] issue exists will not defeat a summary judgment motion in the absence of actual evidence." Trimble v. Wash. State Univ., 140 Wn.2d 88, 93, 993 P.2d 259 (2000)).

Artem's unsubstantiated allegations of fact are not, by themselves, sufficient to overcome a motion for summary judgment. The trial court did not err in dismissing his claims.

Affirmed.

_____ Mann, A.C.J.

WE CONCUR:

_____          _____ Andrus, J.