TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 98-814 |
| of | : | December 1, 1998 |
| DANIEL E. LUNGREN Attorney General | : | |
| ANTHONY M. SUMMERS Deputy Attorney General | : | |

THE HONORABLE BRETT GRANLUND, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May the duly authorized representative of a city examine all the sales and use tax records of the State Board of Equalization relating to the board's determination of the amount of local sales and use tax revenues to be distributed to the city?

CONCLUSION

The duly authorized representative of a city may examine all the sales and use tax records of the State Board of Equalization relating to the board's determination of the amount of local sales and use tax revenues to be distributed to the city.

ANALYSIS

In 1955 the Legislature adopted a comprehensive statutory scheme, the Bradley-Burns Uniform Local Sales and Use Tax Law (Rev. & Tax. Code, §§ 7200-7226; "Act"),[1] authorizing the imposition of sales and use taxes by local governments. Under the Act, the taxes are collected by the State Board of Equalization ("Board") and transmitted periodically to the appropriate city, county, or local agency. (§ 7204.)

With respect to a sales transaction taking place at a single business location, the Board has no difficulty in determining the amount of the tax to be remitted to the local government. However, some transactions involve retailers who have no permanent place of business or who have multiple places of business. In such instances, determining the place of the particular transaction for purposes of the Act is governed by administrative rules and regulations adopted by the Board. (§ 7205.)

The question presented for resolution concerns the ability of a city to verify the accuracy of the Board's tax allocation when the revenues cannot be attributed to specific locations. We conclude that city officials may examine all of the Board's records relating to its allocation determination.

In making its determination, the Board uses a "pooling" formula approved by the court in *City of San Joaquin* v. *State Board of Equalization* (1970) 9 Cal.App.3d 365. Rejecting the City of San Joaquin's challenge to the Board's accounting practice, the court stated:

"Admittedly, under the pooling procedure adopted by the Board, San Joaquin is not allocated the exact amount of sales taxes which it imposes in connection with construction contracts performed within its boundaries; in this sense at least, San Joaquin's sales taxes are allocated to other jurisdictions. However, San Joaquin also shares in the sales tax revenues of other cities under a formula designed to give each city its fair share of all sales taxes collected throughout the county in which the city is located. In addition, by having its sales and use tax ordinance administered, and the sales and use tax collected by the Board, San Joaquin has gained a tremendous economic advantage. San Joaquin, therefore, has not necessarily sustained a loss of tax income from the Board's accounting practice nor has the Board interfered with the city's tax levying powers or its tax revenues within the prohibition of article XI, section 13. Significantly, San Joaquin has offered no evidence to

---

[1] All references hereafter to the Revenue and Taxation Code are by section number only.

prove that it has actually sustained a loss of tax revenues by virtue of the Board's accounting technique. San Joaquin was not required to join the uniform sales tax program. It was free to adopt a sales and use tax ordinance under Government Code section 37101 and to administer this ordinance and collect its own sales and use taxes. In fact, as we have stated, one of the main incentives offered by the Legislature to the cities to induce them to join the uniform program is the distinct economic advantage of having their sales and use tax ordinances administered, and the taxes collected, by the state. But, to foist upon the Board the duty of returning the taxes collected to each city on a transaction for transaction basis would destroy this very economic advantage. Because the pooling procedure is in reality an accounting technique which is reasonable, subserves the interests of all cities and counties and does not, in actuality, deprive any city or county of its revenues, it is not violative of article XI, section 13, of the state Constitution." (Id., at p. 376.)

Whether the Board must allow a city to inspect the Board's records relating to its allocation of tax revenues is governed by the provisions of section 7056. Subdivision (b) of section 7056 states:

"When requested by resolution of the legislative body of any county, city and county, city, or district, the board shall permit any duly authorized officer or employee of the county, city and county, city, or district, or other person designated by that resolution, to examine all of the sales or transactions and use tax records of the board pertaining to the ascertainment of those sales or transactions and use taxes to be collected for the county, city and county, city, or district by the board pursuant to contract entered into between the board and the county, city and county, city, or district under the Bradley-Burns Uniform Local Sales and Use Tax Law (Part 1.5 (commencing with Section 7200)) or the Transactions and Use Tax Law (Part 1.6 (commencing with Section 7251)). Except as otherwise provided herein, this subdivision shall not be construed to allow any officer, employee, or other person authorized or designated by a county, city and county, city, or district to examine any sales or transactions and use tax records of any taxpayer. The costs that are incurred by the board in complying with a request made pursuant to this subdivision shall be deducted by the board from those revenues collected by the board on behalf of the county, city and county, city, or district making the request.

"(1) The resolution shall certify that any person designated by the resolution, other than an officer or employee, meets all of the following conditions:

"(A) Has an existing contract with the county, city and county, city, or district to examine those sales and use tax records.

"(B) Is required by that contract to disclose information contained in, or derived from, those sales or transactions and use tax records only to an officer or employee of the county, city and county, city, or district who is authorized by the resolution to examine the information.

"(C) Is prohibited by that contract from performing consulting services for a retailer during the term of that contract.

"(D) Is prohibited by that contract from retaining the information contained in, or derived from, those sales or transactions and use tax records, after that contract has expired.

"(2) Information obtained by examination of board records as permitted in this subdivision shall be used only for purposes related to the collection of local sales or transactions and use taxes by the board pursuant to the contract, or for purposes related to other governmental functions of the county, city and county, city, or district set forth in the resolution."

In construing the language of section 7056, we follow well established principles of statutory construction, summarized recently in *Schneider* v. *Medical Board* (1997) 54 Cal.App.4th 351, 353-354:

"The primary 'objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.]' (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562.) 'First, a court should examine the actual language of the statute. [Citations.] . . . [¶] In examining the language, the courts should give to the words of the statute their ordinary, everyday meaning [citations].' (*Halbert's Lumber, Inc.* v. *Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238.) 'The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]' (*Dyna-Med, Inc.* v. *Fair Employment and Housing Com.* (1987) 43 Cal.3d 1379, 1387.) `If the meaning is without ambiguity, doubt, or uncertainty, then the language controls. [Citations.] . . . [¶] But if the meaning of the words is not clear, courts must take the second step and refer to the legislative history.' [Citation.]"

Applying these rules of construction to section 7056's provisions, we find that

the statute allows a city to request sales or transactions and use tax records showing how the Board ascertains the amount of taxes collected on behalf of the city, not only the records relating to the taxes actually collected for the city. A city has the right to examine records that the Board uses when it determines how much tax the city is entitled to receive.

The legislative history of section 7056 confirms the plain reading of the statute. When section 7056 was last amended in 1997 (Stats. 1997, ch. 702, § 2), the report of the Senate Rules Committee dated September 11, 1997, noted with respect to the proposed amendment:

> "Existing law limits access to taxpayer records. Currently, a jurisdiction or a representative it hires has access to the Board's tax records for businesses located within that jurisdiction's borders.
>
> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> "This bill explicitly authorizes a jurisdiction or its representative to have access to records relating to the ascertainment of local taxes."

We recognize that individual taxpayers are necessarily encouraged to make full and truthful disclosures in their tax returns without fear that their statements will be revealed or used against them for other purposes. (See *Sav-on Drugs, Inc.* v. *Superior Court* (1975) 15 Cal.3d 1, 6.) However, the right to privacy is not absolute and must be balanced against other important interests. (*Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 37.) The right of a local government to verify that the Board is properly allocating taxes to it is one such interest. The Legislature has incorporated limits and safeguards in section 7056, prohibiting improper dissemination of taxpayer information. (See *Sav-On Drugs, Inc.* v. *Superior Court*, *supra*, 15 Cal.3d at 6.)

In sum, the Legislature has authorized local governments to obtain information from the Board allowing them to verify their allocations of tax revenues. (§ 7056, subd. (b).) Cities must be assured that the Board is properly performing its contractual responsibilities in calculating, collecting, and forwarding taxes collected on behalf of them. We conclude that the duly authorized representative of a city may examine all the sales and use tax records of the Board relating to the Board's determination of the amount of local sales and use tax revenues to be distributed to the city.

* * * * *