Filed 10/17/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GOLF & TENNIS PRO SHOP, INC., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF ORANGE COUNTY, <br><br> Respondent; <br><br> STEVE FRYE et al., <br><br> Real Parties in Interest. | G060852 <br><br> (Super. Ct. No. 30-2020-01167882) <br><br> O P I N I O N |

Original proceedings; petition for a writ of peremptory mandate to challenge an order of the Superior Court of Orange County, James Di Cesare, Judge. Petition denied.

Schumann Rosenberg & Arevalo, Eric Arevalo, Jeffrey P. Cunningham and Viretha R. Wright for Petitioner.

Law Offices of Daniel J. Williams and Daniel J. Williams for Real Parties in Interest.

## INTRODUCTION

It is appropriate to review discovery orders via writ of mandate when "we are presented with a question of first impression which is of general importance to the trial courts and to the profession, and in conjunction with which general guidelines can be laid down for future cases." (*Rudnick v. Superior Court* (1974) 11 Cal.3d 924, 928.) Such a question presents itself here – namely, does the 45-day time period to file a motion to compel further responses to interrogatories begin to run upon service of a combination of unverified responses and objections if the motion challenges only the objections? We answer this question in the negative, and disagree with the trial court's analysis concluding otherwise. The most reasonable construction of the applicable statutes seems to us to require verification of such a hybrid of responses and objections before the time period begins to run. Nonetheless, for different reasons, we hold the trial court did not abuse its discretion in denying petitioners' motions in this case.

## FACTS

Petitioner is a corporate entity running golf establishments in the state of California. Real parties in interest Steve Frye, George St. George, and Andrew Layus have brought a number of gender discrimination claims against petitioner stemming from certain women-only promotions offered in its stores.

### *Frye and St. George's Interrogatories*

On January 4, 2021, petitioner's counsel electronically served Frye and St. George with special interrogatories. The interrogatories were roughly the same questions for each plaintiff, seeking information about visits they had made to petitioner's store locations and previous similar gender discrimination lawsuits filed by them. On or about February 5, 2021, Frye and St. George served unverified responses to the discovery,

which consisted of both substantive responses and objections. Petitioner's counsel did not receive verifications until March 17, 2021.[1]

Petitioners took until late April 2021 to conduct a meet and confer with plaintiffs' counsel regarding Frye and St. George's responses, and the parties engaged in some e-mail correspondence regarding the substance of their objections. Petitioner's counsel sought an extension on a motion to compel further responses to the interrogatories, but received no response to the request. Therefore, on May 5, 2021[2], petitioner went forward and filed notice of such a motion. But no memorandum of points and authorities, declarations, or other supporting documentation was filed until August 23, 2021, 18 court days prior to the September 17, 2021 hearing date set for the motion.

*Layus' Interrogatory Responses*

Petitioner served Layus with a substantially similar set of interrogatories on February 19, 2021. Layus served verified responses to the interrogatories on or about March 23, 2021. Again, petitioner's counsel waited an inordinately long time to meet and confer regarding the responses (until May 7, 2021) and therefore had to seek an extension of its deadline to move to compel, which apparently was not granted. Petitioner thus filed and served its notice of motion to compel Layus to provide further responses to the interrogatories on May 11, 2021. No supporting papers accompanied the notice. Petitioner finally filed them on August 23, 2021, as with the Frye/St. George motion.

---

[1] It is unclear why the verifications were not served with the responses, as Frye and St. George appear to have executed them on February 5.

[2] The record shows petitioner's third-party electronic legal service provider submitted the notice of motion to the trial court on May 4, 2021; petitioner e-mailed the document to opposing counsel on May 4, 2021 as well. However, petitioner shows no evidence the notice of motion was accepted by the trial court as filed on May 4, 2021. Rather, petitioner received an e-mail from its third-party provider stating the electronic filing was "Under Court Clerk Review" as of 5:38 p.m. on May 4, 2021, and another e-mail would be sent upon completion of the review. Petitioner attaches no further e-mail from the trial court showing this review was completed and the document officially confirmed filed on May 4, 2021. Such a confirmation would have constituted evidence the document was actually filed on May 4, 2021. (See Cal. Rules of Court, rule 2.259, subd. (a)(2).) For this reason, we view May 5, 2021 as the actual filing date.

*Motions to Compel Further Responses*

To identify the disputed interrogatories and responses, Petitioner filed separate statements pursuant to California Rules of Court, rule 3.1345, subdivision (a) with both motions. Those interrogatories were numbers 9 through 14, and all of them sought information about lawsuits the plaintiffs had filed claiming violations of certain civil rights statutes. Petitioner sought substantive responses to these questions, and Plaintiffs objected to all of them based on privacy assertions.

In opposition to the motions, all three plaintiffs argued that they were untimely under Code of Civil Procedure[3] section 2030.300, subdivision (c) and that the notices actually filed and served were inadequate without supporting documentation. The trial court agreed and denied both motions as untimely; it ordered sanctions against petitioner.

Petitioner sought a writ of peremptory mandate overturning the trial court's decision. We issued an order to show cause on November 24, 2021, to which real parties in interest filed a return. Oral argument on the petition was entertained.

## DISCUSSION

"Ordinarily the prerogative writ is not a favored method of obtaining review of discovery orders (*Sav-on Drugs, Inc. v. Superior Court* (1975) 15 Cal.3d 1, 5), but it is appropriate where an abuse of discretion results in a *denial* of discovery. (*Pacific Tel. & Tel. Co. v. Superior Court* (1970) 2 Cal.3d 161, 170, fn. 11.) Though broad, the trial court's discretion in discovery matters is not unlimited. (*Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 380.) '[I]f there is no legal justification for such exercise of discretion it must be held that an abuse occurred.' (*Carlson v. Superior Court*

_____

[3] Subdivision (c) of Code of Civil Procedure section 2030.300 states as follows: "Unless notice of this motion is given within 45 days of the service of the verified response, or any supplemental verified response, or on or before any specific later date to which the propounding party and the responding party have agreed in writing, the propounding party waives any right to compel a further response to the interrogatories." All further statutory references are to the Code of Civil Procedure.

4

(1961) 56 Cal.2d 431, 438.)" (*Lehman v. Superior Court* (1986) 179 Cal.App.3d 558, 562.) Here, though we find the trial court's analysis flawed, we hold it ultimately did not abuse its discretion.

Motions to compel further responses to interrogatories are permitted under section 2030.300 when a litigant either fails to respond adequately to an interrogatory or poses what the propounding party believes to be an unjustified objection to one. (See *id.,* subd. (a).) The timeline to file such a motion is not open-ended, however. Section 2030.300, subdivision (c) provides a deadline. And because its interpretation is of central importance in this case, we reproduce here the exact statutory language quoted in footnote 2: "Unless notice of this motion is given within 45 days of the service of the verified response, or any supplemental verified response, or on or before any specific later date to which the propounding party and the responding party have agreed in writing, the propounding party waives any right to compel a further response to the interrogatories." (*Ibid*.)

Real parties in interest contend petitioner waived its right to compel further responses from them because the 45-day period began on February 5, 2021. Their view is that petitioner's motion concerned only their objections and not any of the substantive responses. Their position is that it did not matter if the verifications were served later; the objections were final as of February 5. Petitioner disagrees, contending the 45-day clock did not start to tick until service of the verifications somewhere around March 17.[4]

Respondent trial court agreed with the real parties' calculation. It observed it had no jurisdiction to review an untimely filed motion. And because objections need not be verified, it reasoned, requiring service of verifications to start the 45-day clock would "effectively remove *any* timing requirement" from section 2030.300, thus producing an absurd result.

---

[4] Though it is not clear in the briefing, this argument appears only pertinent to the motion pertaining to St. George and Frye because Layus' responses were served separately with verifications.

5

We find the trial court's analysis flawed on this point, though we appreciate the earnestness with which it attempted to navigate the three a.m. darkness of this area of pre-trial civil procedure. The issue of whether interrogatory responses consisting of both unverified factual responses and objections start the 45-day clock under section 2030.300, subdivision (c) is, to our knowledge, a question of first impression, so we offer here our own analysis of it.

As with any issue of statutory interpretation, "[w]e begin . . . with the statute's actual words, the 'most reliable indicator' of legislative intent, 'assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.' (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.)" (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837-838.)

In this case, the language is clear that the clock on a motion to compel begins to run once "verified responses" or "supplemental verified responses" are served. (§ 2030.300, subd. (c).) Under the canon *expressio unius est exclusio alterius*, the insertion of the word "verified" before the word "responses" necessarily requires us to exclude from the provision what it does not mention – *un*verified responses. (See *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13.) Thus, if responses are not verified, the clock cannot begin to run.

The Legislature inserted the word "verified" as part of an amendment to the Civil Discovery Act made through Assembly Bill No. 1183 in 2013 (AB No. 1183). It was inserted to "resolve any ambiguity in the law by specifying that the 45-day period in

6

which to file a motion to compel does not begin to accrue until service of a verified response is made. Thus, if the response is served before verification, the 45-day period would not yet begin – it would begin upon service of the verification of the previously supplied response." (Senate Analysis of AB No. 1183 (2013-2014 Reg. Sess.) June 4, 2013.) The change was prompted because it was felt many in the litigation bar engaged in a "common practice" of serving timely unverified responses to discovery with the promise of providing verifications for the same as soon as possible. (*Ibid*.) This common practice led to confusion as to when the clock began to run; did it run when the unverified responses were served or only after the verifications were provided? The Legislature's intent was to dispel such confusion. Sadly, in this case it only appears somehow to have created more.

As both real parties in interest and the trial court noted, objections need not be verified under oath. Pursuant to section 2030.250, subdivision (a), "[t]he party to whom . . . interrogatories are directed shall sign the response under oath *unless the response contains only objections*." (*Ibid*., italics added.) Again, we can ascertain from the inclusion of the qualifying word "only" before the word "objections" that a response which consists of *both* objections and responses must be verified, the only exception to this requirement is a response that contains nothing but objections.

We are not to "construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' (*Clean Air Constituency v. California State Air Resources Board* (1974) 11 Cal.3d 801, 814.)" (*People v. Pieters* (1991) 52 Cal.3d 894, 899.) Thus, we must construe section 2030.300, subdivision (c) – a motion to compel further responses to an interrogatory – so that it is consistent with section 2030.250's requirements for the responses themselves. If the 45-day clock runs only upon service of verified responses, and responses consisting of both factual responses and objections

7

must be verified, St. George and Frye's service of *un*verified responses and objections on February 5 could not have activated it.

Section 2030.300, subdivision (a) does, as the trial court observed, include challenges to objections as proper subjects for a motion to compel further response to an interrogatory. And yes, ultimately, petitioner's motion concerned only the objections posed by Frye and St. George, and not any of their factual responses. But – at least in this particular case – both of the aforementioned facts are irrelevant. As a matter of law, the responses here had to be verified because they were a combination of responses and objections. And because they had to be verified, the clock did not begin running until they were – on March 17, 2021.

We can leave for another day the possibility of an "absurd result," as the trial court put it, if there is no time limit on a motion to compel involving objections.[5] Here, the response was mixed facts and objections.[6] That is all we have before us, and there was indeed a time limit on both motions. For Frye and St. George, it was 45 days after March 17, 2021. For Layus, it was 45 days after March 23, 2021.

Unfortunately for petitioner we cannot end the analysis at this point. Even using the later date of March 17, 2021, the motion as to St. George and Frye was untimely. Because their verifications were electronically served on March 17, 2021, petitioner's deadline to "give notice" of its motion to compel their responses was May 4, 2021 (45 calendar days plus 2 court days after service of the verifications). (See §§

---

[5] But that other day will doubtless come, and we're more likely to get it right if the Legislature addresses it before we have to.

[6] At oral argument, real parties' counsel advocated for a response-by-response approach to mixed sets of responses so as to carry out "the legislative intent that discovery proceed not only smoothly, but swiftly as well." (*Professional Career Colleges, Magna Institute, Inc. v. Superior Court* (1989) 207 Cal.App.3d 490, 493-494, quoted in *Sexton v. Superior Court* (1997) 58 Cal.App.4th 1403, 1409.) We disagree. Such an approach would inevitably result in piecemeal motions pertaining separately to factual responses and objections within a given set of discovery. Such an approach seems to us to be unlikely to be either smooth or swift.

8

2030.300, subd. (c); 1010.6, subd. (a)(4)(B).)[7] Petitioner did not file its notice of motion until May 5, 2021.[8] That means the trial court properly denied the motion as to Frye and St. George as untimely. (See *Vidal Sassoon, Inc. v. Superior Court* (1983) 147 Cal.App.3d 681, 683 [holding the deadlines for motions to compel further responses are "mandatory and the court may not entertain a belated motion to compel."].)

That leaves us with the motion to compel Layus' further response. Layus' responses came verified on March 23, 2021, and they were electronically served. Thus, petitioner's deadline to "give notice" of its motion to compel was May 11, 2021 (45 calendar days plus 2 court days). (See §§ 2030.300, subd. (c); 1010.6, subd. (a)(4)(B).) Service and filing of the notice of motion took place on that date and was timely.

But Layus' motion presents us with a second problem. Was the notice of motion alone sufficient? On this question, the trial court responded with an emphatic "no," citing the requirements of section 1010. We agree.

Section 1010 states in pertinent part as follows: "Notices must be in writing, and the notice of a motion, other than for a new trial, must state when, and the grounds upon which it will be made, and the papers, if any, upon which it is to be based. If any such paper has not previously been served upon the party to be notified and was not filed by him, a copy of such paper must accompany the notice." Petitioner's notice stated when it would be made (September 17, 2021), but that was about it.

Section 1010's requirement "is for the benefit of the party upon whom the notice is served," to make him or her aware of the issues to be raised in the motion.

---

[7] Section 1010.6, subdivision (a)(4)(B) provides: "Any period of notice, or any right or duty to do any act or make any response within any period or on a date certain after the service of the document, which time period or date is prescribed by statute or rule of court, shall be extended after service by electronic means by two court days . . . ."

[8] Petitioner asserts the superior court's online reservation system was "not functioning" on May 4, 2021, precluding it from filing and serving the notice sooner. If a technical issue in the court's electronic filing system prevented petitioner from filing the document on May 4, 2021, we might have been able to toll the deadline. (See Cal. Rules of Court, rule 2.259, subd. (c).) But aside from a reference in petitioner's counsel's declaration in support of the motions, petitioner has shown us no evidence about this purported malfunction. In fact, petitioner did not even attempt to explain the late filing of the notice until its reply brief, after respondents had flagged the issue.

9

(*Hecq v. Conner* (1928) 203 Cal. 504, 506; see also *Kinda v. Carpenter* (2016) 247 Cal.App.4th 1268, 1277 (*Kinda*).)  As stated in *Kinda*: "The purpose of the notice requirements 'is to cause the moving party to "sufficiently define the issues for the information and attention of the adverse party and the court."' (*Luri* [*v. Greenwald* (2003) 107 Cal.App.4th 1119] 1125, quoting *Hernandez v. National Dairy Products* (1954) 126 Cal.App.2d 490, 493.)

Sometimes this purpose is met notwithstanding deficient notice.  For example, it may be sufficient that the supporting papers contain the grounds for the relief sought, even if the notice does not.  (*Luri*, [*supra,*] at p. 1125; *366–386 Geary St., L.P. v. Superior Court* (1990) 219 Cal.App.3d 1186, 1200.)  It also may be sufficient if the omitted issue, or ground for relief, was raised without objection before the trial court. (*Fredrickson v. Superior Court* (1952) 38 Cal.2d 593, 598 ['accepting petitioner's claim that the notice of motion was insufficient, the grounds were raised without objection in the trial court at the hearing on the motion'].)" (*Kinda*, *supra*, 247 Cal.App.4th at p. 1277.)

But petitioner's notice of motion was ineffective in doing what a notice is meant to do.  It stated petitioner's intent to move to compel further responses by Layus to the first set of special interrogatories, but it did not identify the specific interrogatories, leaving both Layus and the court with the potential impression that *all* interrogatories were at issue.  It did not cite any statutory authority for the motion, or attempt to state what, if anything, was deficient about Layus' responses to the interrogatories.  It also failed to identify the papers upon which it was to be based.[9]  Even if it was sufficient for petitioner to file a notice of motion without any supporting documentation with it, the

---

9
    At oral argument, counsel disagreed as to whether a meet and confer declaration under section 2016.040 was required to be filed with the notice.  We think it was.  According to section 2030.300, subdivision (b)(1), a motion to compel further responses to interrogatories must be "accompanied" by such a declaration.  And under section 1010, the papers upon which a notice of motion is based must "accompany" the notice.  Reading the two statutes in tandem, as we must, it seems clear the Legislature intended for the meet and confer declaration to accompany the notice of motion, along with all other documents supporting the notice of motion.

notice itself simply did not "give notice" as required by sections 2030.300, subdivision (c) and 1010 or common English usage.[10]

Petitioner argues the notice "substantially complied" because it identified the date, time, and place of the hearing and the grounds on which the motion was based. Only the logistical claim is unequivocally true. The second claim is only true in the sense that the notice stated it was a motion to compel further responses. This could no more be a statement of grounds than a paper with the single word "lawsuit" on it could credibly be called a complaint. We find petitioner's argument that meeting only two out of the five statutory requirements of a notice is "substantial compliance" unconvincing.

Petitioner also says it filed and served amended notices for the motions "well ahead" of the September 17 hearing date. We are glad petitioner got around to it, but it was still too little, too late. Section 2030.300, subdivision (c) required adequate notice to be given to the plaintiffs and the court 45 days after service of the verified response, not in some nebulous timeframe that was "well ahead of the hearing date."

The final issue raised by petitioner was the propriety of the monetary sanctions imposed by the trial court, which totaled $4,447. When properly requested, such sanctions must be imposed by the trial court on the party or attorney who is unsuccessful in either making or opposing a discovery motion. (See § 2030.300, subd. (d).) The only exception is if the court finds the unsuccessful side "acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (*Ibid*.) The burden of showing such circumstances is on the losing party. (See *Mattco Forge, Inc. v. Arthur Young & Co.* (1990) 223 Cal.App.3d 1429, 1441 [observing the Legislature intended to "shift fees and costs to the party who has failed to comply with" the civil discovery statutes].) From our review of the record, petitioner made no attempt

_____

[10] We note in *Weinstein v. Blumberg* (2018) 25 Cal.App.5th 316 – a case on which the trial court and real parties relied – a notice of motion unaccompanied by supporting papers was deemed insufficient even though it *had* specified the papers upon which it would be based. (*Id*. at p. 318.) Petitioner did not even do that, which makes its uphill climb even steeper.

11

to meet its burden to show substantial justification or unjust circumstances.  We cannot now fault the trial court for failing to exercise its discretion in a manner never requested.

Petitioner nevertheless contends there was substantial justification in this instance because the motions presented a question of first impression.  We disagree.  "Our courts have interpreted the term 'substantial justification' to mean 'well-grounded in both law and fact.'  [Citation.]"  (*City of Los Angeles v. Superior Court* (2017) 9 Cal.App.5th 272, 291.)  Petitioner's motions may have involved a vagary of civil procedure, but the motions were properly denied because of petitioner's own mistakes.  Petitioner failed to initiate a meet and confer attempt early in the 45-day period which necessitated law and motion practice on a rushed timeline.  Because of this, petitioner had to scramble to file a motion on the deadline itself, and apparently encountered technical issues which delayed the filing to the day after the deadline.  And for reasons we cannot fathom, petitioner chose to file incomplete moving papers to boot.  There was no substantial justification for this, and we cannot say the court abused its discretion in awarding respondents sanctions.

### DISPOSITION

The petition for writ of mandate is denied.  The order to show cause is discharged.  Each party to bear its own costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


SANCHEZ, J.

12